**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **MICHAEL H. GRIMES SR.**<br>c/o Dann Law<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>Plaintiff,<br><br>v.<br><br>**WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE**<br>c/o Charlie Scharf, CEO<br>420 Montgomery Street<br>San Francisco, CA 94104<br><br>Defendant. | Civil Action No. ____________<br><br>District Judge ____________<br><br>**COMPLAINT FOR DAMAGES – JURY DEMAND ENDORSED HEREON** |

Plaintiff Michael H. Grimes Sr. ("Plaintiff" or "Mr. Grimes"), through undersigned counsel, for his Complaint for Damages against Defendant Wells Fargo Bank, N.A., d/b/a Wells Fargo Home Mortgage ("Wells Fargo" or "Defendant"), states as follows:

**INTRODUCTION**

1. This civil action arises from Wells Fargo's failure to comply with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and its implementing regulation, Regulation X, 12 C.F.R. § 1024.1, *et seq*., in responding to a combined notice of error and request for information that Mr. Grimes, through counsel, sent to Wells Fargo on April 29, 2026.

2. By letter dated April 16, 2025, Wells Fargo sent Mr. Grimes a remediation check for $27,044.07, stating that it had identified that, when his loan "was considered for payment assistance options, it may have been improperly denied." Two months later, by letter dated June 16, 2025, Wells Fargo told Mr. Grimes the opposite: that "no error has occurred," that his loan

"was not affected by this particular remediation event," and that the remediation event actually concerned whether customers were informed of payment changes after a completed FHA partial claim.

3. Mr. Grimes, an elderly veteran borrower, has never received a coherent explanation of what servicing error Wells Fargo identified, when it occurred, or how Wells Fargo calculated the $27,044.07. When he sent a notice of error and request for information seeking exactly that explanation and the related servicing records, Wells Fargo responded only that the matter had been "appropriately addressed" previously, that its "response remains unchanged," and that it "consider[s] this matter resolved." That response neither corrected the asserted error, nor reflected a reasonable investigation, nor provided the requested information, nor complied with the procedures Regulation X requires when a servicer contends that a request is duplicative or overbroad. The lack of information surrounding the $27,044.07 has prevented Mr. Grimes from determining whether an error indeed occurred and whether such amount was an appropriate restitution for the same.

**PARTIES, JURISDICTION, AND VENUE**

4. Plaintiff Michael H. Grimes Sr. is a natural person and the owner of residential real property located at and commonly known as 710 Sheldon Road, Lantana, Texas 76226, located in Denton County, Texas (the "Home"). Mr. Grimes resides at the Home and has maintained the Home as his principal residence at all times relevant to this Complaint.

5. Mr. Grimes's son, Mike Grimes Jr., acts as Mr. Grimes's power of attorney and authorized third party with respect to the Loan (defined below). On or about June 6, 2025, Wells Fargo updated its records to reflect Mike Grimes Jr. as an authorized third party on the account.

6. Defendant Wells Fargo Bank, N.A. is a national banking association with its main office, upon information and belief, in San Francisco, CA. Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

7. At all times relevant to the conduct alleged herein, Wells Fargo was the "servicer" of the Loan, as that term is defined by 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b). By letter dated November 21, 2025, Wells Fargo stated that "Wells Fargo Bank, N.A. is the servicer and owner of the loan." See, Exhibit 7.

8. Upon information and belief, at all times relevant, Wells Fargo designated P.O. Box 10335, Des Moines, IA 50306, as the address to which borrowers must send notices of error and requests for information pursuant to 12 C.F.R. §§ 1024.35(c) and 1024.36(b) (the "Designated Address").

9. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under RESPA, 12 U.S.C. § 2605, and Regulation X. This Court also has jurisdiction pursuant to 12 U.S.C. § 2614, which provides that an action under 12 U.S.C. § 2605 may be brought in the United States district court or in any other court of competent jurisdiction.

10. Venue lies in this District under 28 U.S.C. § 1391(b) and (d) because Wells Fargo resides in this District within the meaning of 28 U.S.C. § 1391(c) and (d): Wells Fargo maintains substantial operations and conducts mortgage servicing business in this District and is subject to personal jurisdiction here.

## SUMMARY OF CLAIMS

11. This action seeks to enforce RESPA and the provisions of Regulation X that became effective January 10, 2014, including 12 C.F.R. §§ 1024.35 and 1024.36, which the Consumer Financial Protection Bureau ("CFPB") promulgated to ensure that mortgage servicers

timely acknowledge, reasonably investigate, and substantively respond to borrowers' written notices of error and requests for information.

12. The Loan is a "federally related mortgage loan" as defined by 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b), and is subject to 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.36.

13. Under 12 U.S.C. § 2605(e) and (k), and 12 C.F.R. §§ 1024.35 and 1024.36, a servicer that receives a qualified written request, notice of error, or request for information at its designated address must: (a) provide a written acknowledgment of receipt within five (5) days (excluding legal public holidays, Saturdays, and Sundays) ("business days"), 12 C.F.R. §§ 1024.35(d), 1024.36(c); 12 U.S.C. § 2605(e)(1)(A); and (b) within thirty (30) business days of receipt, either correct the error or conduct a reasonable investigation and provide a written determination that no error occurred, with the reasons for that determination, and either provide the requested information or conduct a reasonable search and explain why the information is not available, 12 C.F.R. §§ 1024.35(e)(1), (e)(3)(i)(C), 1024.36(d)(1), (d)(2)(i)(B); 12 U.S.C. § 2605(e)(2), (k)(1)(C).

14. A servicer may extend the thirty (30) business day response period only once, by no more than fifteen (15) business days, and only if, before the end of the initial period, it notifies the borrower in writing of the extension and the reasons for it. 12 C.F.R. §§ 1024.35(e)(3)(ii), 1024.36(d)(2)(ii); 12 U.S.C. § 2605(e)(4).

15. A servicer is excused from these response obligations on the ground that a notice of error is duplicative, or that a request for information is duplicative, overbroad, or unduly burdensome, only if it determines that the notice or request is substantially the same as one previously addressed (or is overbroad or unduly burdensome) and notifies the borrower in writing

of that determination, and the basis for it, not later than five (5) business days after making the determination. 12 C.F.R. §§ 1024.35(g)(1)(i), (g)(2), 1024.36(f)(1)(i), (f)(1)(iv), (f)(2). A notice of error is duplicative only if it asserts substantially the same error as a previous notice for which the servicer has already complied with § 1024.35(e), "unless the borrower provides new and material information to support the asserted error." 12 C.F.R. § 1024.35(g)(1)(i). Where a servicer determines that a request for information is overbroad or unduly burdensome, it must still comply with respect to any portion of the request that is not. 12 C.F.R. § 1024.36(f)(1)(iv).

16. RESPA provides borrowers a private right of action for a servicer's failure to comply with 12 U.S.C. § 2605, including subsections (e) and (k), and with the regulations implementing those subsections. 12 U.S.C. § 2605(f). Regulation X confirms that 12 C.F.R. §§ 1024.35 and 1024.36 are enforceable obligations under 12 U.S.C. § 2605(k)(1)(C) and (E), and that borrowers may enforce Regulation X's loss mitigation provisions pursuant to 12 U.S.C. § 2605(f). A borrower may recover actual damages, statutory damages of up to $2,000 per violation where there is a pattern or practice of noncompliance, and costs and reasonable attorneys' fees. 12 U.S.C. § 2605(f)(1)–(3).

## FACTUAL BACKGROUND

### The Loan

17. On or about October 27, 2010, Mr. Grimes executed a promissory note in the original principal amount of $261,034.00 (the "Note"), secured by a deed of trust on the Home recorded in Denton County, Texas on or about November 2, 2010 (the "Deed of Trust") (collectively, the "Loan"). See, a copy of the Note, attached as Exhibit 1.

18. The Loan is insured by the Federal Housing Administration ("FHA"). Upon information and belief, the Loan is required to be serviced in accordance with FHA guidelines.

19. On or about March 13, 2019, the Loan was modified, establishing a new principal balance of $238,497.31 at an interest rate of 5.000%.

20. On or about December 12, 2023, Wells Fargo approved Mr. Grimes for an FHA COVID-19 Partial Claim in the amount of $13,503.03, with the partial claim documents due by December 27, 2023.

21. On or about April 16, 2024, Wells Fargo removed Mr. Grimes from payment assistance review, claiming that it had not received the April 1, 2024 payment and the notarized agreement.

22. Wells Fargo thereafter offered Mr. Grimes trial payment plans, including on or about May 3, 2024, and on or about September 17, 2024, the latter at a monthly payment of $2,328.51.

23. In early 2025, Wells Fargo approved a loan modification (agreement dated January 9, 2025, which Wells Fargo states was executed February 6, 2025) establishing a new principal balance of $181,779.52 at an interest rate of 6.75%, with a maturity date of February 1, 2065, and a HUD partial claim of $54,987.81. See, a copy of the loan modification, included in Exhibit 1.

**The April 16, 2025 Remediation Payment of $27,044.07**

24. By letter dated April 16, 2025, from "Wells Fargo Customer Care – Remediation," Wells Fargo enclosed a check payable to Mr. Grimes in the amount of $27,044.07 (the "Remediation Payment"). See, a copy of the April 16, 2025 letter and check, attached as Exhibit 2.

25. The April 16, 2025 letter stated: "During a review of the Wells Fargo account, we identified that when the loan was considered for payment assistance options, it may have been improperly denied. As a result, we are enclosing a check for $27,044.07." See, Exhibit 2.

26. The April 16, 2025 letter further stated that "[t]he check may include amounts for differences in interest, monthly payment, principal balance, fees, or any combination of these." See, Exhibit 2.

27. The April 16, 2025 letter offered Mr. Grimes nonbinding mediation and stated: "You are not waiving any legal claims by participating." See, Exhibit 2.

28. Upon information and belief, Wells Fargo has never identified the methodology by the Remediation Payment was calculated or the specific servicing error underlying it.

29. In response to Mr. Grimes's requests, by letter dated June 9, 2025, Wells Fargo provided a "[p]ayment breakdown" stating that the "[p]otential impact occurred starting on: December 12, 2023," and listing "Total Interest" of $22,044.07, a "Base Payment" of $5,000.00, and a "Payment Amount" of $27,044.07. See, a copy of the June 9, 2025 letter, attached as Exhibit 3.

30. The Mediation Program Office's June 12, 2025 claim details likewise listed "Interest" of $22,044.07 and "Other" of $5,000.00. Neither document explained how either figure was calculated or what servicing error they were intended to remediate.

**Wells Fargo's Conflicting Explanations**

31. By letter dated June 16, 2025, Wells Fargo's Enterprise Complaints Management Office stated: "We've determined the account was handled properly and no corrections are needed as no error has occurred." See, a copy of the June 16, 2025 letter, attached as Exhibit 4.

32. The June 16, 2025 letter further stated that, because the partial claim was not completed, "this loan was not affected by this particular remediation event, as the remediation event was about whether customers were informed of an increase or a change to their contractual monthly payment after being approved for, and having the Partial Claim completed. We confirmed

that there was no error due to the Partial Claim never finalizing. The remediation check you received was sent to you based on our assessment of potential impact caused by the potential error." See, Exhibit 4.

33. The June 16, 2025 letter also stated: "Respectfully, we found no indication of denying you improperly for a modification," and promised a breakdown under separate cover. See, Exhibit 4.

34. Wells Fargo's June 16, 2025 explanation is irreconcilable with its April 16, 2025 explanation. The April 16, 2025 letter attributed the Remediation Payment to a possible improper denial of payment assistance; the June 16, 2025 letter disclaimed any improper denial and attributed the Remediation Payment to an unrelated event concerning payment-change notices following a completed partial claim, which Wells Fargo said did not affect the Loan.

35. By letter dated July 1, 2025, Wells Fargo repeated the explanation contained in its June 16, 2025 letter.

36. In a June 17, 2025 email, Mike Grimes Jr. noted that Wells Fargo representatives had stated on recorded calls that the Remediation Payment "may have been issued in error."

**Prior Requests and Wells Fargo's Refusals**

37. On August 20, 2025, the parties participated in mediation through New Era ADR. The mediation was unsuccessful; Wells Fargo offered $2,000.

38. Also on August 20, 2025, Mr. Grimes's family submitted a complaint to the CFPB. By letter dated September 19, 2025, Wells Fargo responded that the Remediation Payment consisted of a $22,044.07 refund of interest and $5,000 in "compensation for unknown potential expenses because of the issue," that "there are no additional details to provide related to the

breakdown of the check," and that the request for servicing notes and call logs was "too broad." See, a copy of the September 19, 2025 letter, attached as Exhibit 5.

39. On September 26, 2025, Mr. Grimes, through counsel, sent Wells Fargo at the Designated Address (a) a request for information seeking servicing notes, the transaction history, and loss mitigation records (USPS Certified Mail No. 9589 0710 5270 1452 7426 44) ("RFI #1"), and (b) a request for information seeking the identity of the owner of the Loan (USPS Certified Mail No. 9589 0710 5270 1452 7426 37) ("RFI #2"). Both were delivered on October 1, 2025. See, a copy of RFI #2, attached as Exhibit 6.

40. On November 5, 2025, Mr. Grimes, through counsel, sent Wells Fargo a notice of error for failure to respond to RFI #2 (USPS Certified Mail No. 9589 0710 5270 0013 5828 73), which was delivered on November 11, 2025.

41. By letter dated November 21, 2025, Wells Fargo stated that the "$5,000.00 labeled as 'Other' … was provided as compensation for unknown potential expenses," and that "we are unable to provide a further breakdown of the $27,044.07, as we have already provided the available information." Wells Fargo admitted that the payoff and owner information "was not provided timely," stated that "your client has exhausted all available mediation options," and again characterized the remaining document requests as "too broad." See, a copy of the November 21, 2025 letter, attached as Exhibit 7.

**The April 29, 2026 NOE/RFI**

42. On April 29, 2026, Mr. Grimes, through counsel, sent to Wells Fargo Home Mortgage at the Designated Address, PO Box 10335, Des Moines, IA 50306-0335, via USPS Certified Mail No. 9589 0710 5270 2350 4557 11, a written notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C. § 2605(e) and (k)(1)(C), and request for information pursuant to

12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(e) and (k) (the "NOE/RFI"). See, a copy of the NOE/RFI, with the borrower's authorization and USPS tracking information, attached as Exhibit 8.

43. The NOE/RFI identified Mr. Grimes by name, identified the Home, and identified the Loan by Wells Fargo account number. It enclosed Mr. Grimes's written authorization for counsel and copies of Wells Fargo's April 16, 2025 and June 16, 2025 letters. See, Exhibit 8.

44. Through the NOE/RFI, Mr. Grimes asserted that Wells Fargo committed an error under 12 C.F.R. § 1024.35(b)(11) by providing conflicting and misleading information related to an alleged servicing error. Specifically, the NOE/RFI asserted that Wells Fargo's April 16, 2025 rationale (a possible improper denial of payment assistance) and its June 16, 2025 rationale (an event concerning payment-change notices after a completed partial claim, and no error) are "diametrically opposed," and that Wells Fargo's failure to explain the basis of the Remediation Payment and the nature of the underlying error, together with its conflicting explanations, constitutes an error. See, Exhibit 8.

45. Through the NOE/RFI, Mr. Grimes requested the following information: (1) a detailed explanation of the alleged error that served as the basis for the remediation correspondence and the Remediation Payment, including (a) the subject matter of the error, (b) the date the error occurred, and (c) a breakdown of the amounts comprising the $27,044.07 and the basis for calculating them, by category (interest, monthly payment, principal balance, and fees); (2) copies of written communications, call recordings, or communications logs between Wells Fargo and the borrower prior to June 16, 2025 related to the loss mitigation reviewed in the remediation; and (3) servicing notes prior to June 16, 2025 on the same subject. See, Exhibit 8.

46. The NOE/RFI demanded that Wells Fargo either correct the error or conduct a reasonable investigation and provide a written determination with the reasons for it, a statement of the borrower's right to request the documents relied upon, and contact information. See, Exhibit 8.

47. Wells Fargo received the NOE/RFI at the Designated Address on May 4, 2026. See, Exhibit 8.

48. The NOE/RFI raised an error distinct from those addressed in Wells Fargo's prior correspondence — namely, the irreconcilable conflict between Wells Fargo's own explanations — and made new, specific, and narrowly tailored requests (limited in subject matter to the loss mitigation review underlying the remediation and in time to the period before June 16, 2025) that Wells Fargo had not previously addressed.

49. Wells Fargo was required to acknowledge receipt of the NOE/RFI in writing within five (5) business days, i.e., on or before May 11, 2026, and to provide a compliant substantive response within thirty (30) business days (excluding the May 25, 2026 Memorial Day holiday), i.e., on or before approximately June 16, 2026, absent a proper written extension.

50. Upon information and belief, Wells Fargo did not send a written acknowledgment of receipt of the NOE/RFI within five (5) business days of receipt.

**Wells Fargo's Deficient Response**

51. By letter dated May 18, 2026, Wells Fargo responded to the NOE/RFI (the "Response"). See, a copy of the Response, without enclosures, attached as Exhibit 9.

52. As to the remediation check, the Response stated in its entirety: "After receiving the recent inquiry from you, we reviewed our records and confirmed that these concerns were appropriately addressed on November 21, 2025. In addition, we are enclosing [a] letter dated June

16, 2025, for reference. We were not provided with new information that has not previously been reviewed, so our response remains unchanged. We're including our previous responses dated above. We consider this matter resolved." See, Exhibit 9.

53. The Response enclosed copies of Wells Fargo's prior June 16, 2025 and November 21, 2025 letters and certain loan documents. See, Exhibit 9.

54. The Response did not reconcile Wells Fargo's conflicting April 16, 2025 and June 16, 2025 explanations, or otherwise address the error asserted in the NOE/RFI. See, Exhibit 9.

55. The Response did not identify the subject matter of the underlying error or the date the error occurred. See, Exhibit 9.

56. The Response did not provide any calculation or breakdown of the $27,044.07 beyond the previously stated $22,044.07 in interest and $5,000 in "other," nor the basis for calculating those amounts, nor whether any portion related to differences in monthly payment, principal balance, or fees. See, Exhibit 9.

57. The Response did not provide the requested communications, call recordings, communications logs, or servicing notes prior to June 16, 2025 relating to the loss mitigation review, and did not state that Wells Fargo had conducted a reasonable search and determined that such information was not available. See, Exhibit 9.

58. The Response did not state that Wells Fargo had determined that no error occurred together with the reasons for that determination responsive to the § 1024.35(b)(11) error asserted in the NOE/RFI, and did not state Mr. Grimes's right to request the documents relied upon by Wells Fargo or how to request them. See, Exhibit 9.

59. As of the filing of this Complaint, Wells Fargo has provided no further response to the NOE/RFI.

## IMPACT AND DAMAGES

60. The confusion surrounding the Remediation Payment came at a time when Mr. Grimes believed Wells Fargo may have been wrongdoing in relation to his attempts at loss mitigation and at a time of significant financial distress. The inability to obtain accurate and clear information about what had transpired greatly exacerbated Mr. Grimes's emotional distress to which he had already been subject and hindered his ability to resolve aspects of his financial distress with certainty.

61. As a direct and proximate result of Wells Fargo's failures to properly respond to the NOE/RFI, Mr. Grimes has suffered and continues to suffer actual damages, including but not limited to the following.

a. Legal fees, costs, out-of-pocket costs incurred in preparing, sending, and following up on RFI #2 and the RFI/NOE which were either the direct result of Wells Fargo's previous failures to respond to such correspondence or which otherwise metamorphosed into damages as a result of Wells Fargo's failure to comply with its obligations under RESPA and Regulation X;

b. Mr. Grimes remains unable to understand the nature of the servicing error that Wells Fargo admitted "may have" occurred, how Wells Fargo calculated the $27,044.07, and whether additional amounts — including differences in interest, monthly payment, principal balance, or fees, the very categories Wells Fargo stated the Remediation Payment "may include" — remain owed to him. Mr. Grimes and his family contend that the harm caused by Wells Fargo's servicing conduct far exceeds the Remediation Payment, and without the requested information Mr. Grimes cannot evaluate or pursue appropriate correction of his account.

c. Mr. Grimes has suffered emotional distress, including frustration, anxiety, and stress, as an elderly veteran borrower in fear of foreclosure, all of which was exacerbated by Wells Fargo's conflicting explanations and refusal to provide a meaningful response.

62. Wells Fargo's failures to comply with RESPA and Regulation X in responding to the NOE/RFI are part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e) and (k) and 12 C.F.R. §§ 1024.35 and 1024.36, as evidenced by, inter alia: (a) its repeated refusals to explain the Remediation Payment or to produce servicing records in its September 19, 2025, November 21, 2025, and May 18, 2026 letters; and (b) its admission that it failed to timely provide the payoff and owner information requested on September 26, 2025.

## COUNT ONE:
## VIOLATIONS OF RESPA AND REGULATION X
## 12 U.S.C. § 2605(e), (k)(1)(C) and 12 C.F.R. § 1024.35

**(Failure to Properly Acknowledge and Respond to the NOE/RFI)**

63. Plaintiff restates and incorporates all of the allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

64. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). A notice of error submitted by an agent of the borrower is submitted by the borrower. 12 C.F.R. pt. 1024, Supp. I, cmt. 35(a)-1.

65. Covered errors include "[a]ny other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11).

66. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C). Mortgage servicers are further prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

67. A servicer must respond to a notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); see also 12 U.S.C. § 2605(e)(2).

68. For an error asserted under 12 C.F.R. § 1024.35(b)(11), the servicer must respond not later than thirty (30) business days after receipt. 12 C.F.R. § 1024.35(e)(3)(i)(C). The servicer must also acknowledge receipt in writing within five (5) business days. 12 C.F.R. § 1024.35(d).

69. The NOE/RFI constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) and a qualified written request under 12 U.S.C. § 2605(e)(1)(B), as it is a written notice from Mr. Grimes, through his counsel and agent, that includes his name, the Loan account number, and the Home address, and asserts an error he believes occurred under 12 C.F.R. § 1024.35(b)(11). See, Exhibit 8.

70. Wells Fargo received the NOE/RFI at the Designated Address on May 4, 2026.

71. Upon information and belief, Wells Fargo failed to provide a written acknowledgment of the NOE/RFI within five (5) business days of receipt, in violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(e)(1)(A).

72. Wells Fargo's Response failed to satisfy 12 C.F.R. § 1024.35(e)(1)(i)(A) or (B) because, as alleged in paragraphs 54 through 58, it neither corrected the asserted error nor reflected a reasonable investigation of it, did not address the conflict between Wells Fargo's April 16, 2025 and June 16, 2025 explanations, did not state that no error occurred with reasons responsive to the asserted error, and did not advise Mr. Grimes of his right to request the documents relied upon. See, Exhibit 9.

73. A response that merely refers the borrower to prior correspondence that did not address the asserted error, and declares the matter "resolved," is not a reasonable investigation under 12 C.F.R. § 1024.35(e)(1)(i)(B).

74. Wells Fargo could not avoid its obligations under 12 C.F.R. § 1024.35(e) by treating the NOE/RFI as duplicative because the NOE/RFI asserted a distinct error not previously addressed, Wells Fargo had not previously complied with § 1024.35(e) as to that error, and Wells Fargo did not provide the written notice required by 12 C.F.R. § 1024.35(g)(2).

75. Wells Fargo's failures constitute violations of 12 C.F.R. § 1024.35(d) and (e), and therefore of 12 U.S.C. § 2605(k)(1)(C) and (E), as well as 12 U.S.C. § 2605(e)(1)(A) and (e)(2).

76. As a direct and proximate result of these violations, Mr. Grimes has suffered actual damages as alleged in paragraph 60.

77. Further, Wells Fargo's failures to comply with 12 C.F.R. § 1024.35(e) caused the attorneys' fees and costs associated with the preparation of the NOE/RFI to metamorphose into

damages. *Marais v. Chase Home Fin., LLC (Marais II)*, 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC (Marais I)*, 736 F.3d 711, 721 (6th Cir. 2013).

78. Wells Fargo's actions are part of a pattern or practice of behavior in conscious disregard of Mr. Grimes's rights, entitling him to additional damages of up to $2,000 for this violation. 12 U.S.C. § 2605(f)(1)(B).

79. Mr. Grimes is entitled to recover his costs and reasonable attorneys' fees. 12 U.S.C. § 2605(f)(3).

**<u>COUNT TWO:</u>**
**VIOLATIONS OF RESPA AND REGULATION X**
**12 U.S.C. § 2605(e), (k)(1)(E) and 12 C.F.R. § 1024.36**

**(Failure to Acknowledge the NOE/RFI and Failure to Properly Respond to RFI #2 and the NOE/RFI)**

80. Plaintiff restates and incorporates all of the allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

81. "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a). A request submitted by an agent of the borrower is submitted by the borrower. 12 C.F.R. pt. 1024, Supp. I, cmt. 36(a)-1.

82. Within five (5) business days of receipt, a servicer must provide a written acknowledgment of the request. 12 C.F.R. § 1024.36(c).

83. A servicer must respond to a request for information by either:

(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

84. For a request of the type made in RFI #2, the servicer must respond within ten (10) business days of receipt. 12 C.F.R. § 1024.36(d)(2)(i)(A).

85. For a request of the type made in the NOE/RFI, the servicer must respond within thirty (30) business days of receipt. 12 C.F.R. § 1024.36(d)(2)(i)(B). See, Exhibit 6.

86. Under 12 U.S.C. § 2605(k)(1)(E), a servicer's failure to comply with 12 C.F.R. § 1024.36 is actionable under 12 U.S.C. § 2605(f). See, Exhibit 8.

87. RFI #2 and the NOE/RFI each constitute a request for information as defined by 12 C.F.R. § 1024.36(a), as each is a written request from Mr. Grimes, through his counsel and agent, that includes his name and the Loan account number and states the information requested with respect to the Loan. See, Exhibits 6 and 8.

88. Wells Fargo received RFI #2 at the Designated Address on October 1, 2025.

89. Wells Fargo failed to provide the information requested through RFI #2 within ten (10) business days of receipt as required by 12 C.F.R. § 1024.36(d)(2)(i)(A).

90. Wells Fargo received the NOE/RFI at the Designated Address on May 4, 2026.

91. Upon information and belief, Wells Fargo failed to provide a written acknowledgment of the request within five (5) business days of receipt, in violation of 12 C.F.R. § 1024.36(c).

92. Wells Fargo failed to provide the requested information — including the subject matter and date of the underlying error, the breakdown and basis for calculation of the $27,044.07, and the pre-June 16, 2025 communications, call recordings, communications logs, and servicing

notes relating to the loss mitigation review — and failed to state that it conducted a reasonable search and determined the information was not available, in violation of 12 C.F.R. § 1024.36(d)(1). See, Exhibit 9.

93. The requested information is narrowly tailored by subject matter and time period, relates directly to the servicing of the Loan, and, upon information and belief, is within Wells Fargo's possession, custody, or control.

94. Wells Fargo's failures constitute violations of 12 C.F.R. § 1024.36(c) and (d), and therefore of 12 U.S.C. § 2605(k)(1)(E), as well as 12 U.S.C. § 2605(e).

95. As a direct and proximate result of these violations, Mr. Grimes has suffered actual damages as alleged in paragraph 60.

96. Further, Wells Fargo's failures to comply with 12 C.F.R. § 1024.36(d) caused the attorneys' fees and costs associated with the preparation of RFI #2 and the NOE/RFI to metamorphose into damages. *Marais v. Chase Home Fin., LLC (Marais II)*, 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC (Marais I)*, 736 F.3d 711, 721 (6th Cir. 2013).

97. Moreover, but for Wells Fargo's failure to properly respond to RFI #2, Mr. Grimes, through counsel, would not have incurred fees and costs associated with preparing and sending the notice of error dated November 5, 2025.

98. Wells Fargo's actions are part of a pattern or practice of behavior in conscious disregard of Mr. Grimes's rights, entitling him to additional damages of up to $2,000 for this violation. 12 U.S.C. § 2605(f)(1)(B).

99. Mr. Grimes is entitled to recover his costs and reasonable attorneys' fees. 12 U.S.C. § 2605(f)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael H. Grimes Sr. respectfully requests that this Court enter judgment in his favor and against Defendant Wells Fargo Bank, N.A., d/b/a Wells Fargo Home Mortgage, and grant the following relief:

A. An award of actual damages in an amount to be proven at trial, pursuant to 12 U.S.C. § 2605(f)(1)(A), for each of Counts One and Two;

B. An award of statutory damages of $2,000.00 for each violation, pursuant to 12 U.S.C. § 2605(f)(1)(B), for each of Counts One and Two, for a total of $10,000.00;

C. An award of costs and reasonable attorneys' fees, pursuant to 12 U.S.C. § 2605(f)(3);

D. Pre-judgment and post-judgment interest as permitted by law; and,

E. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: October 27, 2026

Respectfully submitted,

*/s/ Marc E. Dann*

Marc E. Dann (OH 0039425)
Daniel M. Solar (OH 0085632)*
**DANN LAW**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Pro hac vice application anticipated

*Counsel for Plaintiff Michael H. Grimes Sr.*